**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

SEPTEMBER WEBSTER,
Plaintiff,
v.
RECEIVABLES PERFORMANCE MANAGEMENT, LLC
Defendant.

Case No. 1:18-cv-03940-TWP-DML

**ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff September Webster ("Webster") initiated this action against Defendant Receivables Performance Management, LLC ("RPM") after it failed to report to TransUnion credit reporting agency that she disputed owing a certain debt to one of its clients. On February 28, 2020 Webster filed a Motion for Summary Judgment (Filing No. 56). Shortly thereafter, on April 10, 2020, RPM filed a Cross Motion for Summary Judgment. (Filing No. 61). For the following reasons, the Court **denies** Webster's Motion for Summary Judgment and **grants** RPM's Motion.

## I. BACKGROUND

RPM is a debt collection agency licensed by the State of Indiana. RPM regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes. (Filing No. 1 at 2).

Webster was having issues with her broadcast satellite services from DirecTV, including the signal not working when the weather was windy or rainy and pornographic channels being listed in the middle of the network channels, which led to uncomfortable questions from her young son. (Filing No. 57-1 at 8). This prompted her to attempt to cancel her service with DirecTV before the end of her service term. *Id.* at 6. Webster then defaulted on her payment owed to DirecTV, and that debt was transferred to RPM for collection (Filing No. 1 at 2). RPM reported to TransUnion, the credit reporting agency, that Webster owed a $357.00 debt to its client (Filing No. 57-2 at 3).

On September 13, 2017, RPM sent Webster a debt collection letter, which provided various ways to pay the debt or communicate with RPM, being via telephone, US mail or its complaint portal. (Filing No. 61-2 at 30). Webster never received this collection letter because it was sent to an address where she had not lived for several months (Filing No. 57-1 at 8–9).

On August 29, 2018, Webster obtained a copy of her TransUnion credit report on which RPM had reported the delinquent debt owed to DirecTV (Filing No. 57 at 2; Filing No. 57-2). Webster believed that the amount of the DirecTV debt RPM was reporting on her credit report was incorrect. On September 27, 2018, Webster's counsel, John Steinkamp ("Steinkamp") sent a notice disputing her debt to RPM via fax to the facsimile number 1-888-203-3641 ("-3641") (Filing No. 57-7 at 4). Before faxing the dispute notice, Steinkamp verified RPM's facsimile number with the Nationwide Multistate Licensing System & Registry ("NMLS") (Filing No. 57-5 at 7; Filing No. 57-6 at 2). Indiana is one of ten states nationwide that manages debt collection licensing via the NMLS (Filing No. 57-3). In order to obtain a license to act as a debt collector in Indiana, debt collection agencies, including RPM, have to apply to do so via NMLS's website, which requires debt collection agencies to submit certain information, including contact information (Filing No.

57-3; Filing No. 57-4 at 6). After faxing the dispute letter, Steinkamp received notification that the fax was successfully transmitted (Filing No. 1-2 at 1).

However, on December 29, 2017, almost a year before Steinkamp faxed Webster's dispute letter, RPM asked its IT department to remove the facsimile number -3641 from RPM's website and consumer-facing media. (Filing No. 57-4 at 5; Filing No. 61-2 at 32.) RPM did so "to mitigate our risk of potential claims from consumers who allege they sent us something that we cannot locate." (Filing No. 61-2 at 32.) The IT department reported that this was accomplished on or about January 10, 2018; however, the -3641 fax number was not disconnected or otherwise disabled until February 2019. (Filing No. 57-4 at 5, 8; Filing No. 61-2 at 32.) When Steinkamp sent the dispute letter to the -3641 fax number, the number already had been removed by RPM from any consumer-facing media and its website and -3641 was not being identified on RPM's website or consumer correspondences as a proper means of communication. Steinkamp researched the facsimile number after Webster filed this lawsuit, and the NMLS continued to state that the -3641 fax number was RPM's fax number. (Filing No. 57-5 at 7.) It also was listed as the fax number for RPM on the Better Business Bureau's website. (Filing No. 31-2 at 3.) Although Steinkamp's letter transmitted to the -3641 fax number was received, it was not processed or seen by an RPM employee and RPM was unaware there was a facsimile on that system until after the law suit was filed. (Filing No. 57-4 at 8.)

On November 16, 2018, Webster obtained an updated copy of her TransUnion credit report, which did not indicate that RPM's debt was disputed. (Filing No. 1 at 3; Filing No. 56 at 1; Filing No. 57-8.) The credit report noted RPM's report of the DirecTV debt and further noted that the debt was verified by RPM. (Filing No. 57 at 5-6; Filing No. 57-8.) On December 14, 2018, Webster initiated this lawsuit against RPM, asserting violation of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") (Filing No. 1). Thereafter, the parties filed their Cross-Motions for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 (Filing No. 56; Filing No. 61). Additional facts are added in the discussion section of the order.

## II.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).  "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted).  Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted).  "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

These same standards apply even when each side files a motion for summary judgment. The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Serv., LLC v. Int'l Union of Operating Eng'rs.*, 335 F.3d 643, 647 (7th Cir. 2003). The process of taking the facts in the light most favorable to the non-moving party, first for one side and then for the other, may reveal that neither side has enough to prevail without a trial. *Id.* at 648. "With cross-motions, [the Court's] review of the record requires that [the Court] construe all inferences in favor of the party against whom the motion under consideration is made." *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001) (citation and quotation marks omitted).

## III. DISCUSSION

The parties filed cross-motions, each asserting that they are entitled to summary judgment on the FDCPA claim. Webster argues RPM violated § 1692e(8) of the FDCPA—which also resulted in violations of §§ 1692d, 1692e and 1692f of the FDCPA—when it continued to report the DirecTV debt but failed to report that the debt was disputed. (Filing No. 56 at 2.) RPM argues it had no knowledge of Webster's dispute because Steinkamp sent the dispute letter to a fax number no longer utilized by RPM, and thus, it did not violate the FDCPA. (Filing No. 61 at 5–6.) Further, RPM argues that even if the Court finds Webster sufficiently disputed her debt, RPM is entitled to the *bona fide* error defense pursuant to § 1692k(c) of the FDCPA. *Id.* RPM additionally argues that Webster lacks standing to bring her claim because of a lack of injury, and her dispute was untimely. *Id.* at 9–12. The Court will first address whether Webster has standing to bring her claim and whether her dispute was untimely. Then the Court will address the alleged FDCPA violation.

### A. Webster's Motion for Summary Judgment

**1. Standing to Bring Claim**

RPM argues Webster lacks Article III standing to bring her FDCPA claim because she was not injured. (Filing No. 61 at 11–12.) To establish standing, a plaintiff must show:

> (1) an "injury in fact," that is, "an invasion of a legally protected interest which is . . . concrete and particularized, and . . . actual or imminent"; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is "fairly traceable" to the challenged conduct; and (3) a likelihood "that the injury will be redressed by a favorable decision."

*Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (alterations in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Particularization is necessary to establish injury-in-fact, but it is not sufficient. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (U.S. 2016). A "concrete" injury must be "*de facto*," meaning it must actually exist. *Id.* at 1548. A plaintiff cannot satisfy the requirement of standing by alleging a bare procedural violation because a violation of a procedural requirement may result in no harm. *Id.* at 1550. Standing "requires allegations—and, eventually, proof—that the plaintiff [personally] suffered a concrete and particularized injury in connection with the conduct about which he complains." *Trump v. Hawaii*, 138 S. Ct. 2392, 2416 (U.S. 2018); *Spokeo*, 136 S. Ct. at 1547–48.

RPM argues Webster cannot prove an injury-in-fact nor that an injury is traceable to RPM's alleged conduct. (Filing No. 75 at 7.) Webster contends RPM's failure to report her debt as disputed has impacted her credit reputation, including but not limited to her credit score. (Filing No. 72 at 13.) Her credit score was 477 on August 29, 2018, and after disputing several of her other debts, which were correctly reported as disputed, her credit score increased to 488. (Filing No. 57-2; Filing No. 57-8.) RPM argues Webster specifically stated in her deposition testimony that she does not know whether RPM's failure to report her debt as disputed resulted in a lower credit score, and she did not designate an expert witness on this issue. RPM also contends this fact

is evidence that RPM's failure to report the debt as disputed did not impact her credit score, because the score of 477 was one month before Steinkamp sent the dispute letter, and the score of 488 was two months after Steinkamp sent the dispute letter. (Filing No. 75 at 7.) Webster, however, states that, "[h]ad RPM reported her DirecTV debt as disputed, her credit score likely would have increased even further." (Filing No. 72 at 13.)

Webster asserts that these two arguments were decisively rejected by the Seventh Circuit in *Evans v. Portfolio Recovery Assocs., LLC*, 889 F.3d 337, 344–48 (7th Cir. 2018). In *Evans*, the Seventh Circuit specifically rejected RPM's argument, stating,

> Here, [the debt collector]'s alleged violation of § 1692e(8) is sufficient to show an injury-in-fact. Because [the debt collector] failed to report to a credit reporting agency that the debt is disputed, the plaintiffs suffered 'a real risk of financial harm caused by an inaccurate credit rating.' *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 250 (5th Cir. 2017); *see also Saunders v. Branch Banking & Tr. Co.*, 526 F.3d 142, 146–47 (4th Cir. 2008) . . . . An inaccurate credit report produces a variety of negative effects. For instance, it is "a red flag to the debtor's other creditors and anyone who runs a background or credit check, including landlords and employers." *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1082 (7th Cir. 2013) (quoting *Tyler v. DH Capital Mgmt.*, 736 F.3d 455, 464 (6th Cir. 2013)).

*Evans*, 889 F.3d at 345. Based on the Seventh Circuit's decision, the Court determines Webster has established RPM's failure to report her disputed debt caused her an injury-in-fact, and this injury was fairly traceable to RPM's conduct. Therefore, Webster has standing to bring her FDCPA claim.

**2. <u>Timeliness of Dispute</u>**

RPM next argues Webster failed to dispute her the debt within thirty days of RPM's September 13, 2017 debt collection letter, and therefore, RPM had the right to assume Webster's debt was valid. RPM asserts the record indicates Webster did not actually dispute the debt in question as she was unaware of RPM's reporting of her DirecTV debt since she had not reviewed

her credit report. Thus, RPM argues it was entitled to assume the debt was valid and report it as such to TransUnion. (Filing No. 75 at 8.)

Webster argues that the dispute period set forth in § 1692g of the FDCPA—which requires a debt collector to cease collection of a debt until it provides verification of the debt if the consumer disputes the debt in writing within thirty days of receiving the debt collector's initial form collection letter—does not have any bearing on her dispute made on September 27, 2018. (Filing No. 72 at 14.) Webster argues that she never received RPM's collection letter since it was sent to an address where she no longer lived, and RPM was aware of this; thus, she had no opportunity to dispute the debt earlier. Next, relying again on *Evans*, Webster argues, for purposes of § 1692e(8), a consumer "may dispute a debt at any time, and in any manner orally, or in writing, and such a writing may be delivered by U.S. mail, email, text, hand delivery, express mail service, or facsimile." *Id.* at 16.

Drawing a distinction between § 1692g(b) and § 1692e(8), the Seventh Circuit has rejected the argument that disputes under § 1692e(8) must be made within the 30-day period set forth in § 1692g(b) of the FDCPA. The Seventh Circuit explained,

> [The debt collectors] argue that the phrase "disputed debt" in § 1692e(8) must be interpreted in light of § 1692g(b). They are incorrect. To the extent that § 1692g(b) defines "disputed," that definition applies only to the requirements of that provision and does not extend to § 1692e(8). *See Sayles*, 865 F.3d at 250 ("[§ 1692g(b)'s] debt dispute and verification requirements do not carry over to [§ 1692e(8)] . . . ."); *Russell*, 763 F.3d at 392 ("Nothing in the text of the FDCPA suggests that a debtor's ability to state a claim under § 1692e is dependent upon the debtor first disputing the validity of the debt in accordance with § 1692g."); *Brady*, 160 F.3d at 66 ("Viewing the language of § 1692e(8) in the context of other provisions of the FDCPA, it makes logical sense to conclude that the meaning of 'disputed debt' in § 1692g(b) does not carry over to § 1692e(8)."); *see also Hooks v. Forman, Holt, Eliades & Ravin*, 717 F.3d 282, 286 (2d Cir. 2013); *Purnell v. Arrow Fin. Servs., LLC*, 303 F. Appx. 297, 304, 2008 U.S. App. LEXIS 25488 (6th Cir. 2008).

*Evans*, 889 F.3d at 347–48. The Seventh Circuit, quoting the First Circuit, noted that its conclusion was consistent with the language of the FDCPA and § 1692e(8), stating,

> If the meaning of "disputed debt" as used in § 1692g(b) carried over to § 1692e(8), then, in order to trigger the limited protection of § 1692e(8), a consumer would be required to submit written notice to a debt collector within the initial thirty-day period. But the plain language of § 1692e(8) requires debt collectors to communicate the disputed status of a debt if the debt collector "knows or should know" that the debt is disputed. . . . Applying the meaning of "disputed debt" as used in § 1692g(b) to § 1692e(8) would thus render the provision's "knows or should know" language impermissibly superfluous. *Brady*, 160 F.3d at 67 (citations omitted).

*Evans*, 889 F.3d at 348. The Seventh Circuit concluded, "[i]n short, had Congress intended for a debt collector's liability under the FDCPA to hinge upon a debtor's compliance with the validation provisions found in § 1692g, . . . it would have so indicated with conspicuous language to that effect." *Id.* (internal citation and quotation marks omitted). Accordingly, Webster was not required to dispute the debt within the thirty-day time period outlined in § 1692g(b), and her dispute is timely.

**a. <u>Alleged Violation of FDCPA</u>**

The FDCPA prohibits debt collectors from engaging in abusive, deceptive, and unfair practices. The purpose of the FDCPA is to eliminate abusive debt collection practices by debt collectors, to ensure that those "debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Section 1692d states, "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The section further outlines what conduct is considered a violation. *See* 15 U.S.C. §

1692d(1)–(6). Especially relevant to Webster's claim in this case, Section 1692e, regarding false or misleading representations, states,

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692e(8). Additionally, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. "[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person." 15 U.S.C. § 1692k(a).

Webster argues failing to report a debt as disputed violates the FDCPA and that, "[i]f a violation occurs, 'the FDCPA is a strict liability statute that makes debt collectors liable for violations that are not knowing or intentional.'" (Filing No. 1 at 1 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010)). Webster asserts RPM violated § 1692e(8) of the FDCPA, which Webster asserts also resulted in violations of §§ 1692d, 1692e, and 1692f. She argues her debt dispute was effective for purposes of § 1692e(8). RPM's failure to report her dispute "constituted a false statement made in connection with the collection of a debt, in violation of §1692e." (Filing No. 57 at 8.) She argues RPM's "unilateral decision to ignore faxes sent to a number where it had regularly received faxes in the past . . . and which was posted on several consumer-facing sources, including NMLS … was also unfair and unconscionable, in violation of §1692f of the FDCPA." *Id.* at 9. Lastly, Webster argues that RPM, "by verifying its reporting of the disputed DirecTV debt, and failing to include Ms. Webster's dispute, engaged in any conduct the natural consequence of which was to harass, oppress, or abuse, in violation of §1692d of the FDCPA." *Id.*

Webster asserts RPM has not produced any evidence to show its facsimile system did not receive the dispute letter, and, to the contrary, RPM produced the fax in response to Webster's discovery request, showing it did in fact receive the faxed dispute letter. Webster argues that RPM does not contest that the September 27, 2018 dispute letter sent to the -3641 fax number was received; rather, RPM simply claims that "it could ignore Ms. Webster's dispute" because it "unilaterally decided to ignore any notices sent to that fax number." *Id.* at 10. Thus, Webster contends, her dispute notice was received and effective, and RPM violated the FDCPA by not reporting the dispute. Thus, summary judgment in her favor is appropriate.

RPM contends that Webster has failed to provide any evidence demonstrating that it knew or should have known about Steinkamp's September 27, 2018 correspondence. RPM explains that it removed the fax number from its website and informed Webster to use other means to contact it, demonstrating it did not in fact receive or know of Webster's correspondence. Relying on *Irvin v. Nationwide Credit and Collection, Inc.*, RPM argues a fax confirmation shows, at best, that the dispute letter was received by the fax machine. 2019 U.S. Dist. LEXIS 158167, at *8 (N.D. Ill. 2019). RPM asserts there is no evidence that it used the -3641 fax number or viewed any faxes sent to that number, and, because of this genuine issue of material fact as to RPM's knowledge of Webster's debt dispute, Webster's Motion for Summary Judgment must be denied.

RPM has presented evidence that it did not know the information being reported to TransUnion was a false or misleading representation about the disputed debt. However, RPM should have known the information being reported included a disputed debt. Section 1692e(8) provides that a debt collector may not communicate or threaten to communicate to any person "credit information which is known or *which should be known* to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8) (emphasis added).

Steinkamp sent the dispute letter to RPM via the -3641 fax number. Although RPM intended to discontinue using the fax number, the number remained listed for RPM on the NMLS and the Better Business Bureau websites. The fax number previously had been used for communications between Steinkamp and RPM's General Counsel, Mark Case ("Case"), in a case similar to this case (*Crutcher v. RPM* filed in February 2018). (Filing No. 57-4 at 5–6.) Steinkamp also had communicated with RPM via the fax number numerous times in the previous seven years. (Filing No. 57-5 at 13.) While the fax number had been removed from RPM's website and other consuming-facing media, the number was not disconnected, and RPM did not inform Webster or her counsel to not use the fax number. (Filing No. 57-4 at 5.) Steinkamp received verification from MetroFax, the fax service his firm was using, that the dispute letter had been received by RPM. (Filing No. 57-5 at 8.) Additionally, on January 9, 2019, Case sent an email to Steinkamp, which read, "[p]lease be advised that RPM removed our inbound fax line on or about January 10, 2018; therefore we did not receive the fax allegedly sent September 20, 2018." (Filing No. 57-5 at 13.) This email shows Case was advising Steinkamp, at that time, concerning the removed fax line, and this email from Case was sent after the dispute letter had been sent and this lawsuit had been filed. Furthermore, the -3641 fax number was not disconnected or otherwise disabled until February 2019. (Filing No. 57-4 at 8.)

The Seventh Circuit concluded in *Evans* that there had been a violation of the FDCPA under similar circumstances to this case. 889 F.3d at 346. In *Evans*, each plaintiff defaulted on their credit card account, and Portfolio Recovery Associates ("PRA") purchased the debts from the original creditors. *Id.* at 342. More than thirty days after receiving the debt collection letters, the plaintiffs faxed separate letters to PRA that specifically stated, "the amount reported is not accurate." *Id.* PRA acknowledged receiving and reviewing the letters but did not consider the

letters as disputing the debts, and, therefore, PRA reported each debt to credit reporting agencies without noting that the debts were disputed. *Id.* at 343. PRA did not interpret the letters as debt disputes because, in addition to the way the letters were worded, the letters were not faxed to the "special disputes department." *Id.* The Seventh Circuit held that "[t]his is a clear violation of the statute." *Id.* at 346.

For these reasons, the Court determines that RPM violated the FDCPA when it failed to communicate to TransUnion that Webster's DirecTV debt was disputed because RPM should have known Webster disputed the debt. However, the Court's inquiry does not stop here, as discussed below, the Court must next determine whether RPM's *bona fide* error defense applies.

## B. RPM's Motion for Summary Judgment – *Bona Fide* Error Defense

"The FDCPA makes debt collectors liable for violations that are not knowing or intentional. It provides a narrow exception to strict liability, however, for bona fide errors." *Reichert v. National Credit System, Inc.*, 531 F.3d 1002, 1005 (9th Cir. 2008) (internal citation and quotation marks omitted). In determining whether the *bona fide* error defense applies, the court may presume, without actually deciding, that a defendant violated the FDCPA. *See Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). RPM argues that, should this Court determine it violated the FDCPA, it is still entitled to the *bona fide* error defense pursuant to § 1692k(c) of the FDCPA. Therefore, summary judgment in its favor is appropriate.

The *bona fide* error defense provides that:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). "In order to claim this defense, the burden is on the defendant to show (1) that the presumed FDCPA violation was not intentional; (2) that the presumed FDCPA violation

resulted from a bona fide error; and (3) that it maintained procedures reasonably adapted to avoid any such error." *Evans*, 889 F.3d at 349 (internal citation and quotation marks omitted).

RPM argues its "failure to report [Webster's] debt as disputed after [Webster's] September 27, 2018 facsimile was the result of an unintentional error," and its "failure to report [Webster's] debt as disputed after [Webster's] September 27, 2018 facsimile was the result of a *bona fide* error," and the "error occurred despite RPM's maintenance of procedures reasonably adapted to avoid such reporting after receipt of [Webster's] facsimile communication." (Filing No. 61 at 6.) RPM further argues that "there is absolutely no evidence to show that RPM's reporting of [Webster's] debt to Transunion was deliberate." *Id.* at 12.

**1. <u>First Prong – Was the FDCPA Violation Intentional?</u>**

To prevail under the first prong of the *bona fide* error defense, "[a] debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537. "To hold otherwise would effectively negate the bona fide error defense." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). RPM asserts it did not intend to communicate false information to TransUnion by not reporting that the debt was disputed. In the notice letter, RPM identified a telephone number, U.S. mailing address, and an online complaint portal as appropriate ways for Webster to contact RPM regarding her debt, thereby showing that it was not trying to ignore her attempts to do so. RPM explains it removed the -3641 fax number from its website and consumer-facing media and did not list the number on any collection notice sent to Webster, and, as a result, it was unaware of Webster's dispute when she utilized the fax number that was not identified as one of the ways to contact it. Therefore, RPM argues, any FDCPA violation was unintentional.

In response, Webster notes that RPM admitted it did in fact receive the September 27, 2018 dispute letter, so the *bona fide* error defense does not apply. Webster argues, "RPM's violation the FDCPA was, in fact, intentional: RPM had deliberately stopped monitoring a fax number which it had regularly used in the past." (Filing No. 72 at 20.)

In *Evans*, the Seventh Circuit did not apply the *bona fide* error defense because the debt collector made a mistake of law. However, the court further explained, "[b]y contrast, a mistake of fact would have occurred if, for example, [the debt collector] lost the Letters before opening them or did not actually read the language disputing the debt." 889 F.3d at 350. Similar to the example provided by the Seventh Circuit, RPM never read Webster's dispute letter because it believed it had removed that specific fax number from all consumer-facing platforms. The dispute letter went to a fax number no longer used by RPM, and, thus, the letter was "lost". RPM did not receive and read the dispute letter and then intentionally continued to report the debt as undisputed to TransUnion; it simply did not know the dispute letter was sent, and it never read the letter.

Furthermore, contrary to Webster's argument, the fact that RPM deliberately did not check the fax machine—thereby not becoming aware of and reading her dispute letter—does not defeat the *bona fide* error defense. "A debt collector need only show that its FDCPA violation was unintentional, not that its actions were unintentional." *Kort*, 394 F.3d at 537. Even if RPM intentionally did not monitor the fax machine, the evidence shows that RPM's violation of the FDCPA was unintentional when reporting the debt. Thus, RPM has satisfied the first requirement of the *bona fide* error defense under § 1692k(c).

**2. <u>Second Prong – Did the Violation Result from a Bona Fide Error?</u>**

A *bona fide* error is "an error made in good faith; a genuine mistake, as opposed to a contrived mistake." *Kort*, 394 F.3d at 538. RPM asserts it did not know Webster disputed the

debt, so any mistake in reporting Webster's debt to TransUnion was a genuine mistake. RPM reiterates that it did not read Webster's dispute letter until after receiving a copy of Webster's Complaint in this lawsuit; RPM had removed the -3641 fax number from its collection letters, website, and all other consumer-facing media nine months prior; and RPM's system is established to respond to consumer communications via telephone, U.S. Mail, or a complaint portal, not via fax. Specifically, in his deposition, Case states no one was assigned to monitor the -3641 fax number because it was RPM's intent and belief that it was no longer receiving correspondence through the -3641 fax number. (Filing No. 57-4 at 8.)

Relying on *Irvin v. Nationwide Credit Collection*, RPM argues Webster has provided no evidence to demonstrate that RPM read the letter or was actually aware of the disputed debt. In *Irvin*, the plaintiff's counsel sent a debt dispute letter to a fax number the defendant believed was no longer in service. 2019 U.S. Dist. LEXIS 158167, at *3–4 (N.D. Ill. 2019). There, the court held that since the plaintiff had provided no evidence that the defendant was aware of the disputed debt, the defendant had no duty to communicate the dispute to the credit reporting agencies. *Id.* at *8. RPM argues that "the record is devoid of any evidence remotely suggesting that RPM refused to take notice of [Webster's] faxed letter," and the evidence shows that RPM was not aware of Steinkamp's attempted communication of a debt dispute until it was served a copy of Webster's Complaint in this lawsuit. (Filing No. 75 at 10.) Thus, RPM asserts it was a *bona fide* error when it reported Webster's debt to TransUnion without indicating the dispute.

Webster argues the Seventh Circuit has interpreted *bona fide* errors to be confined to "factual and clerical errors". *Oliva v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 864 F.3d 492, 499 (7th Cir. 2017). Webster contends RPM is not claiming that it failed to read her notice due to any mistake, technical error, or clerical error, but rather that it "intentionally avoided reviewing an

electronic fax inbox to which it knew that communications were still being sent regularly and confirmed received." (Filing No. 72 at 18).

The Court determines that RPM's error in reporting Webster's DirecTV debt to TransUnion without indicating that it was disputed was a *bona fide* error. RPM committed this error because it was unaware it had received a dispute letter from Webster as it was sent to a fax number that was no longer being used by RPM. Contrary to Webster's argument, RPM is specifically contending the *bona fide* error was factual or clerical. The error centers around the fact that a letter was "received" by a fax machine, but the fax machine was not checked, and the letter was never read. That RPM was able to produce the faxed dispute letter in its document production responses, after the lawsuit was filed, is not relevant to the determination of a *bona fide* error, at the time the reporting was made to TransUnion. Therefore, RPM has satisfied the second requirement of the *bona fide* error defense.

**3. Third Prong – Did RPM Maintain Procedures Reasonably Adapted to Avoid Such Errors?**

The *bona fide* error defense "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precautions." *Kort*, 394 F.3d at 539. RPM argues it maintained policies and procedures for the purpose of avoiding violations of the FDCPA. RPM has designated evidence that it trains its employees on how to handle and avoid any errors in reporting a "disputed" debt to any credit reporting agencies as well as requiring its employees to pass a written and practical test. (Filing No. 69; Filing No. 70; Filing No. 71.) RPM asserts that Webster is incorrect in her assertion that RPM was required to inform everyone that the -3641 fax number was no longer a proper mode of communication. RPM contends that it took the reasonable step of removing the fax number from all consumer-facing media and its website in an attempt to stop consumers from contacting it through this method. (Filing No. 61-2 at 32.)

Webster responds that RPM has offered no evidence that it had procedures to monitor its fax "inbox" even on a less frequent basis or to communicate that it was no longer in use or was being phased out of use. Webster argues all RPM had to do was simply disconnect the fax machine; failure to do these things, Webster argues, is "simply not a procedure designed to avoid the error RPM made here." (Filing No. 72 at 20.)

In order for the *bona fide* error defense to apply, RPM must show that the procedures were reasonably adapted to avoid errors of the type alleged. These procedures do not have to be perfect, nor does the debt collector have to take every conceivable precaution to avoid errors. "[I]f the procedures were successful in avoiding all such errors, the defense would be meaningless." *Heisler v. Convergent Healthcare Recoveries, Inc.*, 2020 U.S. Dist. LEXIS 44920, at *34 (E.D. Wis. Mar. 16, 2020).

The question, therefore, is not whether RPM had reasonable procedures in place to avoid missing any fax sent to an unused fax number, but rather whether RPM had reasonable procedures in place to avoid incorrectly reporting debts that were disputed. RPM has procedures established for its employees designating how to handle disputed debts and requires them to pass written and practical tests. (Filing No. 69; Filing No. 70; Filing No. 71.) Additionally, RPM updates its employees annually on procedure. *Id.* RPM took reasonable steps to eliminate the -3641 fax number from its consumer-facing media and website in an attempt to no longer receive communications from consumers via the unused fax number (Filing No. 61-2 at 32). This was done specifically to mitigate the risk of consumers' communications going unread. *Id.*

As the Seventh Circuit has said, "[a]lthough [the debt collector] could have done more . . . § 1692k(c) only requires collectors to adopt reasonable procedures." *Hyman v. Tate*, 362 F.3d 965, 968 (7th Cir. 2004). RPM's procedures were reasonable. Therefore, the Court concludes that,

although RPM violated § 1692e(8) because it should have known the debt it was reporting to TransUnion was disputed by Webster, the *bona fide* error defense of § 1692k(c) applies because the error was unintentional, the error was a *bona fide* error, and RPM maintained procedures reasonably adapted to avoid such credit reporting errors. Thus, RPM's Motion for Summary Judgment is **granted,** and Webster's Motion for Summary Judgment is **denied**.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff September Webster's Motion for Summary Judgment (Filing No. 56) and **GRANTS** Defendant Receivables Performance Management, LLC's Cross-Motion for Summary Judgment on Webster's FDCPA claim (Filing No. 61). The trial and final pretrial conference are hereby **vacated**. Final judgment will issue under separate order.

**SO ORDERED.**

Date: 7/21/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Angie K. Robertson
PHILIPPS AND PHILIPPS, LTD.
angie@philippslegal.com

David J. Philipps
PHILIPPS AND PHILIPPS, LTD.
davephilipps@aol.com

John Thomas Steinkamp
JOHN STEINKAMP & ASSOCIATES
John@johnsteinkampandassociates.com

Mary E. Philipps
PHILIPPS AND PHILIPPS, LTD.
mephilipps@aol.com

Brittney B. Rykovich
GORDON REES SCULLY MANSUKHANI
brykovich@grsm.com

Kelly V. Milam
GORDON REES SCULLY MASUKHANI, LLP
kmilam@grsm.com

Sean P. Flynn
GORDON REES SCULLY MANSUKHANI, LLP
sflynn@grsm.com