UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SEPTEMBER WEBSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:18-cv-03940-TWP-DML |
| | ) |
| RECEIVABLES PERFORMANCE | ) |
| MANAGEMENT, LLC, | ) |
| | ) |
| Defendant. | ) |

**ORDER DENYING PLAINTIFF'S MOTION TO AMEND OR ALTER JUDGMENT**

This matter is before the Court on Plaintiff September Webster's ("Webster") Motion to Amend or Alter Judgment (Filing No. 80). This case concerns Webster's claim against Defendant Receivables Performance Management, LLC ("RPM") for violation of the Fair Debt Collection Practices Act. After the parties filed cross-motions for summary judgment, the Court entered summary judgment in favor of RPM (Filing No. 78). In her Motion, Webster asks the Court to amend its summary judgment Entry and enter summary judgment in her favor. For the following reasons, Webster's Motion to Amend Judgment is **denied**.

## I. BACKGROUND

The background facts stated in the summary judgment Entry are not disputed, and are repeated in this Order for convenience. RPM is a debt collection agency licensed by the State of Indiana that "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes." (Filing No. 1 at 2.) In 2017, Webster was having issues with her broadcast satellite services from DirecTV, including the signal not working when the weather was windy or rainy

and pornographic channels being listed in the middle of the network channels, which led to uncomfortable questions from her young son (Filing No. 57-1 at 8). This prompted her to attempt to cancel her service with DirecTV before the end of her service term. *Id*. at 6. Webster defaulted on her payment owed to DirecTV, and that debt was transferred to RPM for collection (Filing No. 1 at 2). RPM reported to TransUnion, the credit reporting agency, that Webster owed a $357.00 debt to its client (Filing No. 57-2 at 3).

On September 13, 2017, RPM sent Webster a debt collection letter, which provided various ways to pay the debt or communicate with RPM, being via telephone, U.S. mail, or its complaint portal (Filing No. 61-2 at 30). Webster never received this collection letter because it was sent to an address where she had not lived for several months (Filing No. 57-1 at 8–9).

On August 29, 2018, Webster obtained a copy of her TransUnion credit report on which RPM had reported the delinquent debt owed to DirecTV (Filing No. 57 at 2; Filing No. 57-2). Webster believed that the amount of the DirecTV debt RPM was reporting on her credit report was incorrect. On September 27, 2018, Webster's counsel, John Steinkamp ("Steinkamp"), sent a notice disputing her debt to RPM via fax to the facsimile number 1-888-203-3641 ("-3641") (Filing No. 57-7 at 4). Before faxing the dispute notice, Steinkamp verified RPM's facsimile number with the Nationwide Multistate Licensing System & Registry ("NMLS") (Filing No. 57-5 at 7; Filing No. 57-6 at 2). Indiana is one of ten states nationwide that manages debt collection licensing via the NMLS (Filing No. 57-3). In order to obtain a license to act as a debt collector in Indiana, debt collection agencies, including RPM, must apply to do so via NMLS's website, which requires debt collection agencies to submit certain information, including contact information (Filing No. 57-3; Filing No. 57-4 at 6). After faxing the dispute letter, Steinkamp received notification that the fax was successfully transmitted (Filing No. 1-2 at 1).

2

On December 29, 2017, almost a year before Steinkamp faxed Webster's dispute letter, RPM asked its IT department to remove facsimile number -3641 from RPM's website and consumer-facing media (Filing No. 57-4 at 5; Filing No. 61-2 at 32). RPM did so "to mitigate our risk of potential claims from consumers who allege they sent us something that we cannot locate." (Filing No. 61-2 at 32.) The IT department reported that this was accomplished on or about January 10, 2018; however, the -3641 fax number was not disconnected or otherwise disabled until February 2019 (Filing No. 57-4 at 5, 8; Filing No. 61-2 at 32).

When Steinkamp sent the dispute letter to the -3641 fax number, the number already had been removed by RPM from any consumer-facing media and its website, and -3641 was not being identified on RPM's website or consumer correspondence as a proper means of communication. Steinkamp researched the facsimile number after Webster filed this lawsuit, and the NMLS continued to state that the -3641 fax number was RPM's fax number (Filing No. 57-5 at 7). It also was listed as the fax number for RPM on the Better Business Bureau's website (Filing No. 31-2 at 3). Although Steinkamp's letter transmitted to the -3641 fax number was received, it was not processed or seen by an RPM employee, and RPM was unaware there was a facsimile on that system until after this lawsuit was filed (Filing No. 57-4 at 8).

On November 16, 2018, Webster obtained an updated copy of her TransUnion credit report, which did not indicate that RPM's debt was disputed (Filing No. 1 at 3; Filing No. 56 at 1; Filing No. 57-8). The credit report noted RPM's report of the DirecTV debt and further noted that the debt was verified by RPM (Filing No. 57 at 5–6; Filing No. 57-8).

Less than a month later, on December 14, 2018, Webster initiated this lawsuit against RPM, asserting violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA") (Filing No. 1). Thereafter, the parties filed their cross-motions for summary judgment (Filing No.

3

56; Filing No. 61). The Court denied Webster's motion and granted RPM's motion, determining that RPM violated the FDCPA because it failed to report the debt as disputed when it should have known that it was disputed but the *bona fide* error defense applied to RPM's actions (Filing No. 78 at 13, 19). Webster then filed her Motion to amend the judgment (Filing No. 80).

## II. LEGAL STANDARD

A motion to alter or amend a judgment under Rule 59(e) "must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The purpose of a motion to alter or amend a judgment under Rule 59(e) is to ask the court to reconsider matters "properly encompassed in a decision on the merits." *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174 (1989). "A Rule 59(e) motion will be successful only where the movant clearly establishes: (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 954 (7th Cir. 2013) (citation and quotation marks omitted). Relief pursuant to a Rule 59(e) motion to alter or amend is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). A Rule 59(e) motion may be used "to draw the district court's attention to a manifest error of law or fact or to newly discovered evidence." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). A manifest error "is not demonstrated by the disappointment of the losing party. It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and quotation marks omitted). Furthermore, "a Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier." *Brownstone Publ'g, LLC v. AT&T, Inc.*, 2009 U.S. Dist. LEXIS 25485, at *7 (S.D. Ind. Mar. 24, 2009).

4

### III.  DISCUSSION

Webster advances three arguments that she believes warrant an amendment to the judgment and granting summary judgment in her favor.  First, she argues that RPM's conduct was intentional.  Second, Webster asserts that RPM's failure to read her dispute letter was not a *bona fide* error.  And third, she contends RPM did not maintain processes or procedures to avoid this specific error.  Webster has not presented or relied upon newly discovered evidence for the substance of her Motion.  Instead, she argues only that the Court committed a mistake of law by applying the *bona fide* error defense to RPM's actions.

In particular, Webster argues the Court's ruling is contrary to the binding authority of *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337, 349 (7th Cir. 2018); *Leeb v. Nationwide Credit Corp.*, 806 F.3d 895, 899 (7th Cir. 2015); *Oliva v. Blatt, Hasenmiller, Leibsker & Moore*, 864 F.3d 492, 499 (7th Cir. 2017); and *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich*, 559 U.S. 573, 587, 130 S. Ct. 1605, 1614 (2010).  These cases establish that a debt collector must demonstrate, by a preponderance of the evidence: (1) that the presumed FDCPA violation was not intentional; (2) that the presumed FDCPA violation resulted from a bona fide error; and (3) that it maintained procedures reasonably adapted to avoid any such error.  *Evans* at 349.  In making this determination, the court construes the facts and all reasonable inferences to be drawn from them in favor of the non-moving party (*Evans* at 343); a collector must show that it took specific steps to avoid the error at issue, (*Leeb* at 900); and, the *bona fide* error defense, pursuant to §1692k(c) of the FDCPA, is confined to clerical or factual errors (*Olivia* at 499; *Leeb* at 899, citing *Jerman* at 587).  (Filing No. 80 at 2-3.)  Webster argues that here, RPM intentionally ceased monitoring incoming faxes for a fax number which it listed as its contact and intentionally decided to ignore communications sent to a specific fax number which it still owned.  (Filing No. 80 at 4.)

5

Responding to the Motion, RPM asserts that Webster has failed to establish any manifest error of law or fact committed by the Court, and Webster is simply relitigating and rearguing her positions taken during the summary judgment proceedings. RPM then reiterates its positions that support summary judgment in its favor based upon the *bona fide* error defense and points out the ways in which it believes the Court correctly applied the defense. RPM explains that the Court specifically pointed out in its Order that a debt collector "need only show that its FDCPA violation was unintentional, not that its actions were unintentional." (*See* Filing No. 78, at 14) (citing *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005)); (Filing No. 83 at 6). RPM again argues that Webster's reliance on the third party NMLS website in support of her bona fide error argument is unreasonable as the NMLS is a third party licensing website which is not owned or operated by RPM. Id. at 8. And reasserts that in order for RPM to have taken the alleged "calculated risk," Plaintiff would have to demonstrate that RPM was aware of the probability of Plaintiff relying on the NMLS for contact information instead of the proper modes of communication provided by RPM. *Id*. RPM concludes that instead of utilizing one of the numerous forms of communication identified on RPM'S website and/or in its written communications with Webster, her counsel intentionally created the harm of which Webster now complain. *Id*. at 12.

In her reply, Webster warns that the Court's summary judgment order (Filing No. 78) could establish a dangerous precedent for consumers, permitting collectors to unilaterally "ignore" types of communication sent via methods it no longer wants to receive, to discontinue use of fax machines, or to stop reading mail sent to a specific address published for consumer disputes. (Filing No. 84 at 6.)

6

The Court reiterates that all of these arguments were substantially made by the parties in the cross-motions for summary judgment. In her summary judgment pleadings, Webster argued that RPM violated the FDCPA and that it was not entitled to the *bona fide* error defense because its conduct was intentional, its failure to read her dispute letter was not a *bona fide* error, and it did not maintain processes or procedures to avoid this specific error. In her pending Motion, Webster again argues RPM is not entitled to the *bona fide* error defense because its conduct was intentional, its failure to read her dispute letter was not a *bona fide* error, and it did not maintain processes or procedures to avoid this specific error.

Webster's contention that RPM admitted to receiving her September 27, 2018 debt dispute letter and therefore her letter was not "lost" as asserted by the Court in its Order is a misrepresentation of the record. (*See*, Filing No. 80 at 3; Filing No. 78 at 15.) Instead, RPM specifically denied having "received" the letter and has stated from the beginning of the litigation that it was not aware of the letter until after Webster's counsel served the Summons and Complaint. As this Court properly found, the evidence established RPM never read or processed Webster's letter until after the filing of the Complaint. (*See*, Filing No. 61-2; Filing No. 72 at 7.)

As argued by RPM, Webster's reliance on *Evans* is misplaced because even if she could point to some fact in the record suggesting that RPM should have known of her debt dispute letter, any failure on the part of RPM to report Webster's debt was a result of a *bona fide* error pursuant to § 1692k(c). Webster does not present any new case law that was not available to her before the Court issued its Entry on summary judgment. Instead, she repeats the arguments from her summary judgment motion and contends the Court misapplied the previously provided case law. But Webster's contentions are not persuasive. As noted in the Entry on summary judgment, the *bona fide* error defense of § 1692k(c) applies in this case because the error was unintentional. In

7

the notice letter, RPM identified a telephone number, U.S. mailing address, and an online complaint portal as appropriate ways for Webster to contact RPM regarding her debt, thereby showing that it was not trying to ignore Webster's attempts to report her dispute. Thus, the FDCPA violation was unintentional and the error was a genuine mistake. RPM also took reasonable steps to eliminate the -3641 fax number and maintained procedures reasonably adapted to avoid such credit reporting errors. A Rule 59(e) motion is not an opportunity to relitigate motions or present arguments, issues, or facts that could and should have been presented earlier. *Brownstone Publ'g*, 2009 U.S. Dist. LEXIS 25485, at *7. That is what Webster attempts to do with her Motion. She has not met the high standard for amending an order after final judgment has been entered.

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff September Webster's Motion to Amend or Alter Judgment (Filing No. 80).

**SO ORDERED.**

Date: 1/26/2021

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

David J. Philipps
PHILIPPS AND PHILIPPS, LTD.
davephilipps@aol.com

Mary E. Philipps
PHILIPPS AND PHILIPPS, LTD.
mephilipps@aol.com

Angie K. Robertson
PHILIPPS AND PHILIPPS, LTD.
angie@philippslegal.com

John Thomas Steinkamp
JOHN STEINKAMP & ASSOCIATES
John@johnsteinkampandassociates.com

Sean P. Flynn
GORDON REES SCULLY MANSUKHANI
sflynn@grsm.com

Kelly V. Milam
GORDON REES SCULLY MANSUKHANI
kmilam@grsm.com

Brittney B. Rykovich
GORDON REES SCULLY MANSUKHANI
brykovich@grsm.com